David M. Wahlquist (Bar No. 3349)
dwahlqui@kmclaw.com
Rod N. Andreason (Bar No. 8853)
randreason@kmclaw.com
Ryan B. Frazier (Bar No. 9007)
rfrazier@kmclaw.com
**KIRTON & McCONKIE**
1800 Eagle Gate Tower
60 East South Temple
P.O. Box 45120
Salt Lake City, UT 84145-0120
Telephone: (801) 328-3600

*Attorneys for Defendant Wolf Mountain Resorts, L.C.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WOLF MOUNTAIN RESORTS, L.C., a Utah limited liability company,<br><br>    Petitioner,<br>vs.<br><br>SUMMIT COUNTY, a political subdivision of the State of Utah,<br><br>    Respondent. | **DECLARATORY JUDGMENT COMPLAINT**<br><br>Case No. 2:09-cv-768<br><br>Judge: Ted Stewart |

Plaintiff Wolf Mountain Resorts, L.C. ("Wolf Mountain"), by and through its counsel, for its declaratory judgment complaint against defendant Summit County, alleges as follows:

4832-1799-5268.1

## PARTIES AND JURISDICTION

1.     Summit County is a political subdivision of the State of Utah and for diversity purposes is a citizen of the State of Utah.

2.     Defendant Wolf Mountain is a citizen of Texas and California. *See Wolf Mountain Resorts, L.C. v. Talisker Corp.*, Case No. 2:07-CV-00548DAK, Memorandum Decision and Order dated Jan. 4, 2008; *Wolf Mountain Resorts L.C. v. ASC Utah*, Case No. 2:08-CV-101TS, Memorandum Decision and Order Denying Motion to Dismiss dated July 21, 2008.

3.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5.     There is more than $75,000 in controversy.

## FACTUAL ALLEGATIONS

6.     Wolf Mountain is the owner of certain property located in Summit County, Utah.

7.     The property is subject to an Amended and Restated Development Agreement for The Canyons Specially Planned Area ("SPA Agreement"), which was entered into on November 15, 1999.

8.     The original parties to the SPA Agreement are Summit County, American Skiing Company of Utah, Inc., American Skiing Company Resort Properties Inc., Beaver Creek Associates, Wolf Mountain Resorts L.C., Willow Draw L.C., DA Osguthorpe Family Partnership, William Lincoln Spoor, Leslee Sherrill Spoor, Iron Mountain Associates L.C., IHC Hospitals Inc., Olympus Construction LLC, The Canyons Cabin Club LLC, Harold E. Babcock, Halbert Engineering Inc., Harold B and Ruth B. Weight, State of Utah School & Institutional

Trust Lands, Mines Ventures Company Inc., C&M Properties LLC, Silver King Mines, Parkway Land Development L.C., Parkwest Associates, Sugarbowl Associates LLC, Richard Jaffa, Joseph L. Krofcheck, Gerald Friedman, The Hansen Group L.C., Robert M & Joan E. Astle, DRM Investment Group L.C., Gregory A. Dean, and Ski Land LLC.

9.  The SPA Agreement creates a "contractual relationship" between the parties thereto, including Summit County and Wolf Mountain, and governs development of the property. (*See* SPA Agreement §§ 6.8 and 6.15.)

10. The SPA Agreement requires development of an 18-hole golf course. Section 3.2.6 of the SPA Agreement reads, in relevant part:

> Golf Course. The Canyons Master Plan includes an environmentally sensitive 18-hole Golf Course, as depicted in Exhibit B.4 so as to satisfy the County's requirement that The Canyons be a world class, all season resort. The parties to this Amended Agreement whose property includes land for the Golf Course acknowledge and agree that completion of the course is one of the highest priority public amenities in the SPA. To this end, all affected property owners hereby agree to establish an agreement within 90 days of the Effective Date of this Amended Agreement for the purpose of setting such lands aside at no cost to the County, RVMA, or other entity for the construction of the Golf Course....

11. Section 5.1.1 of the SPA Agreement states that a default occurs upon one of the following events:

> (1) A finding and determination made by the County following a Benchmark or Annual Review that upon the basis of substantial evidence, the Master Developer, Developers, The Colony Master Association, or RVMA have not complied in good faith with one or more of the material terms of conditions of this Amended Agreement, including a failure to satisfy Benchmarks under Section 3.3; or

  (2) Any other act or omission by the Developer(s) that materially interferes with the intent and objective of this Amended Agreement.

12.  Section 5.1.2 sets forth the procedure upon a declaration of default:

  <u>Procedure Upon Default.</u> Within ten (10) days after the occurrence of a default hereunder, the County shall give the Defaulting Party ... written notice specifying the nature of the alleged default and, when appropriate, the manner in which the default must be satisfactorily cured. The Defaulting Party shall have sixty (60) days after receipt of written notice to cure the default.

13.  Section 5.1.3 says what remedies the County has if the default remains uncured:

  <u>Equitable Remedies</u>: In the event a default remains uncured after proper notice and the expiration of the applicable cure period without cure, the County shall have the option of suing the Defaulting Party for specific performance or pursuing such other remedies against the Defaulting Parties as are available in equity. It is stipulated between the parties for purposes of any judicial proceeding that the County need only establish the occurrence of default under Section 5.1.1 of this Amendment Agreement to obtain equitable relief.

  <u>Major Default</u>: A "major default" means a default which, taking this Amended Agreement as a whole, has the effect of denying the County the essential benefits of this Amended Agreement or placing upon the County significant negative fiscal impacts not contemplated by this Amended Agreement. In the event of a major default, the County shall have the option of terminating this Amended Agreement in its entirety after proper notice and expiration of the applicable cure periods without cure, and after exhaustion of all equitable remedies, if applicable.

14.  In the event this default mechanism fails to resolve disputes among parties to the SPA Agreement, section 5.8.1 requires the dispute to be arbitrated. It states, in full:

>Binding Arbitration. In the event that the default mechanism contained herein shall not sufficiently resolve a dispute under this Amended Agreement, then every such continuing dispute, difference, and disagreement shall be referred to a single arbitrator agreed upon by the parties, or if no single arbitrator can be agreed upon, an arbitrator shall be selected in accordance with the rules of the American Arbitration Association and such dispute, difference, or disagreement shall be resolved by the binding decision of the arbitrator, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. However, in no instance shall this arbitration provision prohibit the County from exercising enforcement of its police powers where Developers are in direct violation of the Code.

15. Section 5.7 of the SPA Agreement declares:

>Other Remedies. All other remedies at law or in equity, which are consistent with the provisions of this Amended Agreement, are available to the parties to pursue in the event there is a breach.

16. On June 18, 2009, the County Manager of Summit County held a "public hearing," ostensibly "for the purpose of taking evidence regarding: (1) the status and enforcement measure pertaining to the Golf Course amenity; (2) the request to proceed with constructing the Golf Course prior to acquisition by the RVMA and ASCU of all of the land required for the Golf Course; (3) the status and construction schedule of roads; and (4) any other miscellaneous matter bearing on the successful implementation of the [SPA Agreement]."

17.     Following this hearing, the County Manager "took the matter under advisement" and on July 30, 2009, issued the attached Findings of Fact and Conclusions of Law Regarding the Enforcement and Status of the Amended and Restated Development Agreement for The Canyons Specially Planned Area, Snyderville Basin, Summit County Utah, which was later amended by a first addendum thereto (collectively, "Findings & Conclusions").

18.     The County Manager denied Wolf Mountain's request to keep the hearing open for an additional seven days to allow Wolf Mountain to submit additional evidence.

19.     Paragraph 61 of the Findings of Fact declares: "All decisions regarding the administrative enforcement of development agreements and zoning ordinances is a function of the County Manager pursuant to Summit County Code, §1-14-10(F)(4) and UCA § 17-53-302(4)."

20.     Paragraph 62 of the Findings of Fact declares: "The County Manager can elect to enforce any development agreement through a Standstill and Forbearance Agreement, suspension of permits, selective equitable actions (such as lawsuits for specific performance and rescission), and any other remedies available in equity or at law."

21.     Paragraph 64 of the Findings of Fact declares: "[T]he County Manager is the final County decision maker as to all enforcement actions. Appeals [from] the County Manager's enforcement decisions is to the District Court under UCA § 17-27a-801(3) based on the record of the Public Hearing upon which the County Manager relied in making his decision pursuant to UCA § 17-27a-801 (7)-(8)."

22.     Paragraph 65 of the Findings of Fact declares that the County "has the exclusive power to enforce the terms and conditions of the [SPA Agreement] on Participating Landowners" and "the exclusive power to declare a default" under the SPA Agreement.

23.     Paragraph 16 of the Conclusions of Law declares: "There are adequate remedies that can be imposed on violators to gain compliance under § 5.1.3(a), styled 'Remedied upon Default – Equitable Remedies,' which include rescission and specific performance. [citations omitted] Consequently, Binding Arbitration is not and shall not be invoked under § 5.8.1 and the County shall not terminate the entire [SPA Agreement] at this time."

24.     Paragraph 17 of the Conclusions of Law declares that Wolf Mountain is in violation of §§ 3.2.6, 3.5.1.5, 5.1.1 and 5.12.1 of the SPA Agreement and is in default and that the SPA Agreement "shall be rescinded and terminated on October 1, 2009 unless [Wolf Mountain] cures said default" by taking eight outlined actions.

25.     Although the County Manager declares that Wolf Mountain has until November 7, 2009 to cure these alleged defaults – the SPA Agreement requires 60 days to cure – paragraph 26 of the Conclusions of Law declares that the Findings & Conclusions are "the final land use decision of Summit County under the County Land Use, Development and Management Act, UCA, Title 17, Chapter 27a" and that an appeal must be taken "within 30 days of the Effective Date to the Third District Court, Summit County, Utah pursuant to UCA §17-27a-801." Thus, according to the Findings & Conclusions, Wolf Mountain is required to appeal before the 60 days to cure has expired.

26. Paragraph 26 of the Conclusions of Law states further that if no appeal is taken the Findings & Conclusions "shall be binding upon all parties to the [SPA Agreement] and may be enforced by the Third District Court, Summit County, Utah, on all parties thereto."

## CLAIM FOR RELIEF
### Declaratory Judgment

27. Paragraphs 1 through 26 are incorporated herein by reference.

28. The Findings & Conclusions of the County Manager are not a land use decision under the County Land Use, Development, and Management Act ("the County Land Use Act") and are therefore not subject to appeal under Utah Code Ann. § 17-27a-801.

29. The County has declared defaults under the SPA Agreement in the past and has never treated such decisions as "land use" decisions under the County Land Use Act.

30. Section 5.4 of the SPA Agreement declares that the County Development Code and General Plan along with other provisions of Utah State Law, including the County Land Use Act, apply to the development of the subject land only if the County terminates the SPA Agreement.

31. Even if the Findings & Conclusions were a land use decision under the County Land Use Act, the County Manager is not "the final County decision maker as to all enforcement actions." Utah law affirmatively requires that "[e]ach county adopting a land use ordinance shall, by ordinance, establish one or more appeal authorities to hear and decide … appeals from decisions applying the land use ordinances." Utah Code Ann. § 17-27a-701. This appeal

authority "serve[s] as the final arbiter of issues involving the interpretation or application of land use ordinances …." *Id.*

32. The County has not provided Wolf Mountain with such an appeal route in this case.

33. The SPA Agreement is not a land use ordinance. Section 6.16 of the SPA Agreement, captioned "Relationship of Parties," declares that the SPA Agreement creates a "contractual relationship between the County and the Master Developer [ASCU] and Participating Landowners," including Wolf Mountain.

34. The SPA Agreement sets forth a "default mechanism" and declares the rights and remedies of the parties thereto in the event of a default or breach.

35. If the default mechanism in the SPA Agreement does not resolve the differences between the parties thereto, the SPA Agreement obligates the County to exhaust its equitable remedies and to submit to binding arbitration. The Findings & Conclusions violate the terms of the default mechanism set forth in the SPA Agreement.

36. Pursuant to 28 U.S.C. § 2201, Wolf Mountain seeks a judicial declaration from this Court regarding the parties' legal rights and obligations under the SPA Agreement. A judicial declaration is necessary and appropriate under the circumstances to protect the valuable vested rights granted to Wolf Mountain under the SPA Agreement.

## REQUEST FOR RELIEF

**WHEREFORE**, Wolf Mountain seeks a judicial declaration that:

1.      The SPA Agreement creates a contractual relationship between Wolf Mountain and Summit County.

2.      That the rights and remedies of Wolf Mountain and Summit County for any alleged breach or default are controlled by the default mechanisms agreed to by the parties as set forth in the SPA Agreement.

3.      That the County Manager's Findings & Conclusions violate the default mechanism set forth in the SPA Agreement.

4.      That the County Manager's Findings & Conclusions are not a "final land use" decision under the Utah County Land Use, Development, and Management Act.

5.      For costs and attorneys fees as provided for by law or agreement.

6.      For any other relief, legal or equitable, to which Wolf Mountain may be entitled.

DATED this 28th day of August, 2009.

                                KIRTON & McCONKIE

                                */s/ David M. Wahlquist*
                                David M. Wahlquist
                                Rod N. Andreason
                                Ryan B. Frazier
                                *Attorneys for Wolf Mountain Resorts, L.C.*